

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| **v.** | § § | **CRIMINAL NO. 1:09-CR-114-ALLTH** |
| **PHILIP DELL CLARK, et al.,** | § § § | |

# Memorandum Opinion

On June 24, 2010, the Court held a hearing on *Defendants' Motion to Exclude the Government's Proposed Expert Witness Craig DeWees* [Clerk's Docket No. 156] and the *Government's Motion to Exclude Defendants' Proposed Expert Witnesses Thomas Fricke and Nicholas Farley* [Clerk's Docket No. 162]. Upon due consideration of the applicable law and the evidence presented at the hearing, the Court granted Defendants' motion and excluded the proposed testimony of Craig DeWees. The Court further granted the Government's motion, in part, by excluding the proposed testimony of Thomas Fricke, and denied the motion, in part, by refusing to exclude the proposed testimony of Nicholas Farley. The Court now enters this memorandum opinion to lay out its reasoning.

## Background

This criminal prosecution arises out of the operation of four self-styled internet cafes, owned or operated by the various Defendants. Patrons of these cafes, upon purchase of internet time, were

able, to enter a "sweepstakes." Patrons paid cash for their computer time, which was put onto a debit card. A customer could then insert the debit card into an available computer and either access the internet or "the various sweepstakes games which resembled slot machine configurations normally found in legal gambling casinos." Gov't Am. Tr. Brief 2 [Clerk's Docket No. 148]. Texas law prohibits gambling, the operation of a gambling place, the promotion of gambling and the possession or ownership of a gambling device with the intent to further gambling. Tex. Pen. Code § 47.01 - .04. Defendants are charged under the federal statute, 18 U.S.C. § 1955, with conducting an illegal gambling operation.[1] They are also charged under the federal conspiracy and money laundering statutes. Because this federal prosecution rests entirely on the underlying Texas state gambling laws, the applicability of those laws to Defendants' operations is a focal point of this case for both the prosecution and defense.

To that end, Defendants proffered two expert witnesses. The first, Thomas Fricke, is an attorney who has worked in the national gambling and sweepstakes industry for twenty years. He is proffered as an expert in "games for prizes" and legal sweepstakes, or game promotion in connection with the sale of a consumer product or service. The second is Nicholas Farley, a computer software engineer who examined the software used in the raided cafes. He would testify how the software program operated and what its limits or functions were.

The Government proffered one rebuttal witness, Craig DeWees, a twenty one year veteran of the Dallas Police Department who has spent fourteen years in the vice division. He proposed to

---

[1] In addition to violating the underlying state laws, the federal statute requires the Government prove that the illegal gambling business was conducted, financed, managed, supervised, directed or owned by five or more persons, remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in a single day.

testify as a rebuttal witness to any expert testimony that the "sweepstakes" was not gambling by testifying that, in his opinion as a law enforcement officer familiar with the Texas Penal Code and with various games of chance, it was.

## Analysis

*A.     Legal Standard*

Rule 702 of the Federal Rules of Evidence allows a witness qualified as an expert to testify in the form of an opinion, or otherwise, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Trial courts are charged with the responsibility of acting as the gatekeepers of expert testimony.[2] *See Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 590-93 (1993); *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371-72 (5th Cir. 2000). When expert testimony has been challenged, it is incumbent upon the court to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant. *See* FED. R. EVID. 702; *see also* FED. R. EVID. 104(a); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)(en banc). Following the fact finding, "the court must articulate its basis for admitting expert testimony." *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001).

---

[2]This being said, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *See United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id. (quoting Daubert*, 509 U.S at 596). " [T]he district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions.'" *Id*. at 1077.

The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that challenged expert testimony is admissible. *See* FED. R. EVID. 104(a); *see also Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *See Moore*, 151 F.3d at 276 *(citing In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994)).

Pursuant to Federal Rule of Evidence 704, expert opinion testimony may embrace an ultimate issue to be decided by the trier of fact. Fed. R. Evid. Rule 704. However, it is well-established in the Fifth Circuit that Rule 704 does not permit an expert to render conclusions of law. *United States v. $9,041,598.68*, 163 F. 3d 238, 255 (5th Cir. 1996) (citing *Snap-Drape, Inc. v. Commissioner of Internal Revenue*, 98 F. 3d 194 (5th Cir. 1996). Therefore, expert testimony that offers a legal opinion is inadmissible. *Estate of Sowell v. United States*, 198 F. 3d 169 (5th Cir. 1999); *Askanage v. Fatjo*, 130 F. 3d 657, 669 (5th Cir. 1997). "Our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase* at 673. "If an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury." *Id.* Further, "the trial court must be wary lest the expert become nothing more than an advocate of policy before the jury." *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F. 2d 1230, 1233 (5th Cir. 1986).

B.  *Thomas Fricke's proposed testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue and his opinion on whether the operations at issue in this trial resemble other, legal sweepstakes operated throughout the country is irrelevant.*

Mr. Fricke testified that his primary area of expertise was "games for prizes, all branches, all kinds in the United States." Hearing Transcript 25, lines 13-14. As a lawyer, his role has been to study how a particular game works to ensure compliance with various state and national laws. Since 1995, he has been an independent consultant in the national gaming industry on compliance issues. Although Mr. Fricke's qualifications are impressive, his testimony amounted to his opinion that the operation conducted by Defendants resembled others in the national gaming industry. This opinion is irrelevant to the inquiry of whether this operation complied with Texas law. Mr. Fricke further testified about "the incentive process of why games for prizes work in the marketing context." *Id.* 36, lines 10-11. Product promotion through games for prizes, is not so unfamiliar to the ordinary person that an expert is needed to explain why marketers might wish to use such games to promote their products. Mr. Fricke's testimony is both unable to assist the trier of fact and irrelevant. Therefore, the Court excluded him.

C. *Mr. Farley is qualified to offer expert testimony on the nature and workings of the computer software at issue in this case; his testimony is both reliable and relevant to this case.*

Nicholas Farley is a computer software analyst whose primary business is in the "regulatory compliance testing of electronic gaming devices and systems, including slot machine, bingo systems, amusement games." Hearing Transcript 66, lines 5-6. He graduated with a bachelor degree in engineering from the Stevens Institute of Technology, Hoboken, New Jersey in 1987. He has over twenty years experience in the testing and evaluation of gaming and electronic devices and since 2000 he has been president of a company which provides technical consulting and compliance testing, serving both private and governmental entities. He has testified as an expert witness in the software analysis of games for chance computer programs in both federal and state court on several

occasions. The Court finds that Mr. Farley is well-qualified to offer an expert opinion on the workings of the computer software program used by Defendants.

Mr. Farley testified that he generally tests the software first by performing a "functional analysis" or by playing the game and seeing how a patron interacts with it. Hearing Transcript 68, lines 20-24. Next, he goes through the "source code" of the system. At the hearing, Mr. Farley defined source code as "the computer program that's written in specific programming language and when it's compiled, it creates the executable files that run the game or system." Hearing Transcript 69, lines 7-10. To understand the source code requires specialized knowledge of computer programming and the computer language in which it is written. *Id.* He performed a functional analysis and a source code analysis on the computer program used in Defendants' operations. Mr. Farley testified that he had formed an opinion, based on his analysis of the software, as to how the software worked, that it did not work in the same way as a slot machine, and that it did resemble other sweepstakes programs that he had studied. He further testified that he could explain to the jury how the system works, what it does, and what it won't do. Hearing Transcript 79-80. The Court finds that Mr. Farley's proposed testimony is both reliable and relevant.

D.  *Craig DeWees' proposed testimony shall not assist the jury.*

Craig DeWees is an experienced detective with the Vice Division of the Dallas Police Department. In fourteen years of vice duty, he has investigated hundreds of possible illegal gambling enterprises. Hearing Transcript 103, line 8-15. He did not investigate this case but has met with several of the investigating officers. The Government offered him as a rebuttal witness to Mr. Farley and Mr. Fricke in the event they should be allowed to testify the computer software program was not

illegal gambling but a legal sweepstakes. The Government has stressed that it found none of the three proposed witnesses necessary as it did not believe any expert testimony necessary in this case. Having listened to Mr. DeWees proposed testimony, the Court finds that his opinion that Defendants' "sweepstakes" scheme was illegal gambling under the Texas Penal Code regardless of the way in which the computer program worked is inadmissible.

## Conclusion

For the foregoing reasons, the Court entered its June 25, 2010 order excluding Mr. Fricke and Mr. DeWees from testifying as experts in this trial and refusing to exclude Mr. Farley from the same.

**SIGNED** this the 7 day of **July, 2010.**

_____
Thad Heartfield
United States District Judge